

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

JEREMY PINSON,
PLAINTIFF

v.

UNITED STATES OF AMERICA,
DEFENDANT

CASE NO. 22-CV-00375-RM

## MOTION FOR A PRELIMINARY INJUNCTION (FIFTH)

Comes Now the pro se plaintiff, Jeremy Pinson, pursuant to Fed. R. Civ. P. 65(a) and seeks a preliminary injunction enjoining the Federal Bureau of Prisons/United States from denying her transfer to the Residential Drug Abuse Program ("RDAP" hereinafter) for treatment of her Opioid Use Disorder, Severe ("OUD" hereinafter) and Cannabis Use Disorder ("CUD" hereinafter) under the Eighth Amendment to the US Constitution and federal law for the reasons set forth herein.

### I. RELEVANT FACTS

The Federal Bureau of Prisons ("BOP" hereinafter) has an RDAP in more than 70 federal prisons across the nation. (See, Declaration of Jeremy Pinson at Att. A, First Step Act Programs Guide excerpt). Plaintiff is diagnosed with a set of serious medical conditions which if left untreated are commonly fatal, especially in combination: OUD/CUD. (id. at Att. B). Plaintiff is receiving partial treatment in the form of Medication (id. at Att. C;  ) but other than buprenorphine injections she is receiving no other treatment because such treatments are offered in the RDAP. (id; Att.A). Plaintiff's treatment plan, formulated by her BOP Psychologist, does not include substance abuse treatment (id. at Att. D) so her psychologist, unit team, and Warden submitted her for transfer to a RDAP for treatment upon her being interviewed and signing the Agreement to Participate in RDAP. (id; Att. E). However, for reasons unclear to plaintiff except staff claims of a retaliatory motive, plaintiff has not been transferred to an RDAP. (id. At Att.F).

### II. LEGAL STANDARDS

The Court cited the legal standards in its issuance of a preliminary injunction in Doc. 115 in Pinson v. Carvajal, No. 22-cv-00298-RM, thus the plaintiff cites to the standard cited by the court itself:

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks omitted); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." Porretti v. Dzurenda, 11 F.4th 1037, 1047 (9th Cir. 2021)(citation omitted).
A Plaintiff seeking a preliminary injunction must show: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in her

-1-

favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20. When the government opposes a preliminary injunction, "the third and fourth factors of the preliminary-injunction test- balance of equities and public interest-merge into one inquiry." Porretti, 11 F.4th at 1047. Under the "sliding scale" test, if a plaintiff shows that the balance of hardships "tips sharply" in her favor, then the plaintiff must only show "serious questions going to the merits"-in addition to satisfying the public interest and irreparable harms factors- in order to justify preliminary injunctive relief. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011)(finding "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

Additionally, under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm. 18 U.S.C. 3626(a)(2); see Gilmore v. People of the State of Cal., 220 F.3d 987, 999 (9th Cir. 2000).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination" and makes it difficult for a party to procure supporting evidence in a form that would be admissible at trial. Flynt Distrib Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984). As a result, a "preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). In its determination on a motion for a preliminary injunction, "a court may properly consider evidence that would otherwise be inadmissible at trial." Cherokee Inc. v. Wilson Sporting Goods Co., No. CV-15-04023 BRO (Ex), 2015 WL 3930041, at *3 (C.D.Cal. June 25, 2015); see Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009)(district court did not abuse its discretion by considering "unverified client complaints" and the plaintiff's counsel's interested declaration when it granted a preliminary injunction); Flynt Distrib. Co., 734 F.2d at 1394 (the district court has discretion to rely on hearsay statements when deciding whether to issue a preliminary injunction). A court may also consider evidence or developments that postdate the pleadings. Farmer v. Brennan, 511 U.S. 825, 846 (1994).

When evaluating the merits of a preliminary injunction motion, a court's factual findings and legal conclusions are not binding at trial on the merits. Univ. of Tex., 451 U.S. at 395.

### III. ARGUMENTS AND AUTHORITIES

A. Likelihood of Success on the Merits

The first Winter factor, "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). It is well established that the first factor is "especially important when a plaintiff alleges a constitutional violation and injury." Baird v. Bonta, 81 F.4th 1036, 1040-41 (9th Cir. 2023). If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates she is suffering irreparable harm no matter how brief the violation. (id.)(citing Planned Parenthood Ariz., Inc. v. Humble, 753 F.3d 905, 911 (th Cir. 2014). And her likelihood of success on the merits also tips the public interest sharply in her favor because "it is always in the public interest to prevent the violation of a party's constitutional rights." (id.)(quoting Riley's Am. Heritage Farms v. Elasser, 32 F.4th 707, 731 (9th Cir. 2022)(quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

An individual's Eighth Amendment right to medical and mental health care is one such constitutional right. To support such a claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). There are two-prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." Id. (citations omitted). A "serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992). As stated, "serious medical needs can relate to physical, dental and mental health.'" Edmo v. Corizon Inc., 935 F.3d 757, 785 (9th Cir. 2019).

Second a prisoner must show that the defendant's response to that need was deliberately indifferent. Jett, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)(quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.

Individual RDAP determinations are judicially unreviewable by statute, except in cases where "BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority" Reeb v. Thomas, 636 F.3d 1224, 1229 (9th Cir. 2010), to date only one federal court - the Eleventh Circuit Court of Appeals - has been confronted by a challenge to a BOP decision involving designations upon constitutional grounds: Doe v. Wooten, 376 Fed. Appx. 883 (11th Cir. 2010). In Doe, a prisoner alleged BOP officials were "acting with deliberate indifference in failing to protect Plaintiff from retaliation after he participated in the investigation of a Bureau of Prisons officer in Atlanta, Georgia." 376 Fed. Appx. at 883. "As to the claim against Defendants Lappin and Stover in their official capacities, we agree with the parties that a plaintiff may be able to obtain injunctive relief against a federal officer acting in his official capacity when the officer acts beyond statutory or constitutional limitations." 376 Fed. Appx. at 884 (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, (1949); Saine v. Hosp. Auth., 502 F.2d 1033, 1036-37 (5th Cir. 1974)). The Supreme Court also reaffirmed this principle in Farmer, 511 U.S. at 850-51.

1. OBJECTIVE COMPONENT

The first question the court must answer is, is OUD/CUD a "serious medical need"? Jett, 439 F.3d at 1096.
Several federal courts have recognized OUD by itself as a serious medical need: See, Milton v. Trate, No. 22-cv-00988-EPG (E.D.Cal., Dec. 8, 2022)("Plaintiff sufficiently alleges that each defendant knew that he had a serious medical need for MAT for his opioid use disorder"); the federal government recognizes OUD as a serious medical need. See, Information About Medication-Assisted-Treatment (MAT), U.S. Food and Drug Administration, https://www.fda.gov/drugs/information-drug-class/information-about-medication-assisted-treatment-mat (last visited April 11, 2024); other courts in other circuits recognize OUD is a serious medical need. See, Roman v. Cnty of Chester, No. 23-cv-4032-KSM (E.D.Pa., May 13, 2024) ("Neither the County Defendants nor the Medical Defendants explicitly dispute that opioid use disorder is a serious medical need. Nor can they. See, e.g., Strickland v. Del. Cnty., No. 21-4141, 2022 WL 1157485, at *4

--3--

(E.D. Pa., Apr. 19, 2022)(recognizing opioid use disorder as a serious medical need)); Happel v. Bishop, No. 23-cv-00013-SPB, 2024 WL 1508561, at *10 (W.D.Pa., Feb. 22, 2024)(same). It is a mental health condition characterized by a problematic pattern of opioid misuse causing distress and impairment of daily life, which often leads to overdose and deaths. See, https://my.clevelandclinic.org/health/diseases/24257-opioid-use-disorder-oud (last visited 2/12/24). The court may take judicial notice of background medical facts pursuant to Federal Rule of Evidence 201(b)(2) because they are "not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." See, e.g. Rankins v. Washington, 2017 WL 4364060, at *3 (W.D.Mich., Sept. 29, 2017)(taking judicial notice of facts presented on prominent medical website); Green v. CDCR, 2016 WL 6124148, at *1 n.1 (E.D.Cal. Oct. 19, 2016)(same).

Wherefore, the first prong of the deliberate indifference test is satisfied here by the existence of independent evidence that plaintiff's medical condition is objectively a "serious medical need" under the Eighth Amendment.

2. <u>SUBJECTIVE COMPONENT</u>

Medication Assisted Therapy for diagnosed opioid use disorder is a "holistic modality for recovery and treatment that employs evidence-based therapy, including psychosocial treatments and psychopharmacology, and FDA-approved medications as indicated for the management of withdrawal symptoms and maintenance." See Title 32, Code of Federal Regulations, § 199.2 (Definitions - Office of the Secretary of Defense). "Opioid Treatment Programs" are programs that "offer medication assisted treatment patient-centered, recovery-oriented individualized treatment through addicition counseling, mental health therapy, case management, and health education." id. at §199.6

The only material differences between MAT in the Department of Defense and the Bureau of Prisons is that outside of the medication itself which can be administered anywhere, the remainder of MAT - the "patient-centered, recovery-oriented, individualized treatment through addiction counseling, mental health therapy, case management, and health education" occur inside an RDAP, which is why the USP Allenwood Warden submitted a Request for Transfer seeking plaintiff's redesignation to an RDAP.

Congress mandated by federal law that "the Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse" 18 U.S.C. 3621(b). BOP was given a "Phase-in" period by Congress. id. at 3621(e):"In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall...provide residential substance abuse treatment (and make arrangements for appropriate aftercare)--...(C) for all eligible prisoners by the end of fiscal year 1997". (id). By "residential substance abuse treatment" Congress defined such at 18 U.S.C. 3621(e)(5)(A): "means a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population" which became RDAP. (See, Pinson Decl. at Att. A). In 2018, with the First Step Act, Congress added that "evidence-based recidivism reduction programming and productive activities that shall be assigned for each prisoner" which "shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs". 18 U.S.C. 3632(b)-(d). The word "shall" means "an obligation is imposed." 28 C.F.R. 500.1(e); U.S. v. Monsanto, 491 U.S. 600, 607 (1989)(stating that by using "shall" the

"Congress could not have chosen stronger words to express its intent...be mandatory"); Brower v. Evans, 257 F.3d 1058, 1067 n. 10 (9th Cir. 2001) ("Shall means Shall").

As the Court can see by the plaintiff's medical records however, for reasons the prison officials attribute solely to "pissing off the Central Office" with her news media and legal activities, plaintiff is not at this time receiving any treatment for her OUD/CUD which is why the Warden of USP Allenwood submitted plaintiff for transfer to an RDAP after first having her sign the agreement to participate. Other than retaliation, the Warden is unable to give the plaintiff a single other reason why her RDAP transfer has been held in limbo. (Pinson Decl. at 4).

Deliberately denying plaintiff the non-medication components of MAT in an Opioid Treatment Program as the term is defined by the federal government itself, in a residential substance abuse program such as the Congress mandated, is a violation of the subjective component of the Eighth Amendment. Deliberate indifference is the intentional denial of a form of treatment for a serious medical need. Here, there is no disputing that OUD is a serious medical need, nor that RDAP exists to provide residential treatment for such medical needs, the only dispute is that the Bureau is resistent to providing the residential substance abuse treatment that the plaintiff needs for her serious medical need. That is a textbook example of deliberate indifference when the Bureau has over 70 locations where it could assign plaintiff, as well as direct defiance of the will of Congress which made plain that by 1997, almost 30 years ago, all Bureau prisoners who needed RDAP were to receive it prior to their release from custody. See, 18 U.S.C. 3621(e)(5)(A).

### 3. Conclusion

Based upon the aforegoing, plaintiff is likely to succeed on the merits of her Eighth Amendment claim pertaining to denial of transfer to RDAP for treatment of her OUD which she currently is not receiving in the Secure Administrative Unit in Allenwood, PA. (See Pinson Decl. and Att.'s). At a minimum, plaintiff has definitely raised "serious questions going to the merits." See, Alliance for the Wild Rockies, 632 F.3d at 1134-35.

### B. IRREPARABLE HARM

The Ninth Circuit noted in Baird v. Bonta, 81 F.4th 1036 (9th Cir. 2023) that, "If a plaintiff bringing such a [constitutional] claim shows he is likely to prevail on the merits, that showing will almost always demonstrate he is suffering irreparable harm as well." (id)(citing Planned Parenthood Ariz. Inc., 753 F.3d at 911; Melendres, 695 F.3d at 1002)("The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting Elrod v. Burns, 427 U.S 347, 373 (1976)(plurality opinion)); also, Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017)(holding that a finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional").

Accordingly, "when an alleged deprivation of a constitutional right is involved... most courts hold that no further showing of irreparable injury is necessary." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2948.1 (3d ed. 1998). There is however publicly available evidence of the consequences of what the Ninth Circuit called the "epic crisis of deadly opioid abuse and overuse" the court may rely upon in determining whether denial of necessary treatment would constitute an

irreparable injury independent of the one recognized by Elrod in the violation of her Eighth Amendment right itself. See, e.g. United States v. Garrison, 888 F.3d 1057, 1059-60 (9th Cir. 2018):

> "There is now an epic crisis of deadly opioid abuse and overuse. In 2016 roughly 11.5 million people in the United States misused prescription opioids. U.S. Dep't of Health and Human Services, 'About the U.S. Opioid Epidemic', https://www.hhs.gov/opioids/about-the-epidemic/ That same year 116 people on average died every day from opioid-related drug overdoses. Id. And in 2017, the Acting Secretary of Health and Human Services declared the national opioid abuse epidemic a public health emergency. U.S. Dep't of Health and Human Services, 'HHS Acting Secretary Declares Public Health Emergency to Address National Opioid Crisis (2017)', https://www.hhs.gov/about/news/2017/10/26/hhs-acting-secretary-declares-public-health-emeregency-address-national-opioid-crisis.html (last visited March 8, 2018)."

The very real harm plaintiff faces without the treatment and care of RDAP is more than just a constitutional injury, it is one that could cost her her very life. (See also, Exhibits 2-5, Cases/Policies Re: RDAP).

## C. REMAINING FACTORS

Considering denial of RDAP could lead to plaintiff's death, what is the cost of her going to RDAP to the BOP? That is the next question under Winter normally. But, A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth Winter factors decisively in her favor. Because "public interest concerns are implicated when a constitutional right has been violated,...all citizens have a stake in upholding the Constitution," Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005), meaning "it is always in the public interest to prevent the violation of a party's constitutional rights." Elasser, 32 F.4th at 731 (quoting Melendres, 695 F.3d at 1002); See also, Cal Chamber of Com. of the U.S. v. Bonta, 62 F.4th 473, 483 (9th Cir. 2023); Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014)). The government also "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983); see also, Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013)(holding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice" implicating any "constitutional concerns"). Thus, the Ninth Circuit has held that both the public interest and the balance of the equities favor a preliminary injunction for plaintiffs who are able to "establish a likelihood that a policy violates the U.S. Constitution". Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1069 (9th Cir. 2014); Hernandez, 872 F.3d at 996.

In sum, because plaintiff's first Winter factor is in a case where she alleges a constitutional injury, there is "no surprise that our case law clearly favors granting preliminary injunctions to a plaintiff...who is likely to succeed on the merits of [her][constitutional] claim." See, Bonta, 81 F.4th at 1041-42 (quoting Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009)).

Finally, plaintiff only seeks a preliminary injunction enjoining the BOP from denying her transfer to an RDAP. This is narrowly tailored to remedy no more than the constitutional violation at issue here: deliberate indifference to her serious medical needs. Under 18 U.S.C. 3626, this is as narrow as it could get, even though the problem here is one much more serious than limited to this plaintiff and to this case. The Bureau has so

egregiously mishandled MAT and the population of inmates who need it and other residential substance abuse treatment that courts have been highly critical. "[T]he court has serious doubts that his continued incarceration will yield any benefit. Indeed, it appears to be making things worse. Unless there are significant changes to the status quo, such as Janczewski participating in the Residential Drug Abuse..Program, he will likely be released to supervision in the normal course, still addicted, and facing even greater pressures than those that led to his incarceration in the first place." United States v. Janczewski, 560 F.Supp.3d 1064, 1067 (E.D.Mich., Sept. 16, 2021). Court have been forced to grant compassionate release to prisoners because of the Bureau of Prisons inability and "failure to provide [inmates] with mental health services and substance abuse treatment" See, United States v. Johnson, 671 F.Supp.3d 265, 281 (E.D.N.Y. 2023)(citing United States v. Hatcher, 2021 WL 1535310, at *4 (S.D.N.Y. 2021)(citing deprivation of "mental health care, drug abuse treatment, and other important services"); United States v. Herrera, No. 17-CR-415 (S.D.N.Y. May 24, 2023)(stating "BOP's inability or unwillingness to provide effective mental health treatment to help remedy its own wrongs" grounds for compassionate release)(citing United States v. Collado, 2022 WL 329318, at *4 (S.D.N.Y. Feb. 2, 2022). Courts sentence offenders while considering under federal law how "to provide the defendant with needed...medical care, or other correctional treatment in the most effective manner" assuming access to substance abuse treatment. 18 U.S.C. 3553(a)(2)(D).

The Bureau's denial of RDAP and necessary services in its prisons is certainly not a remedy that is necessary to just the plaintiff, but in this case plaintiff is only seeking a remedy narrowly tailored to remedy the constitutional wrong in her own denial of treatment. She cites the other examples for the court's consideration of the scope and the scale of the Bureau's problems in providing such to its population as a whole.

## CONCLUSION

WHEREFORE for the reasons set forth herein, the plaintiff hereby respectfully asks the court to enter a preliminary injunction enjoining the Bureau of Prisons from failing to provide the plaintiff with transfer to a RDAP program, and to give the Bureau 30-days to redesignate her to an RDAP facility.

*Jeremy Pinson*

DECLARATION OF JEREMY VAUGHN PINSON

I declare the following is true and correct under the penalty of perjury:

1. I am housed in the Secure Administrative Unit of the United States Penitentiary in Allenwood, Pennsylvania - a federal prison run by the Federal Bureau of Prisons - and have been provided a First Step Act Programs Guide (July 2024) outlining the available RDAP Programs. The section on RDAP is Attachment A hereto.

2. Attachment B hereto is BOP medical documentation from my Bureau Electronic Medical Records reflecting my diagnosis of Opioid Use Disorder Severe and Cannabis Use Disorder. Attachment C hereto originates from the same records system and reflects the medication I receive for my OUD.

3. Attachment D hereto is a copy of the treatment plan formulated by my assigned Psychologist Dr. Greene. I was not permitted any input into the formulation of this treatment plan.

4. I do not receive substance abuse treatment of any kind in the SAU or at USP Allenwood more generally except my injections of the medication. Beyond medication, noone ever speaks to me about my Opioid Use Disorder Severe for any reason to provide me with treatment. The only time that anyone ever spoke to me about it was to interview me for the Residential Drug Abuse Program which I signed the agreement to participate in upon my transfer thereto after I filed multiple administrative remedies challenging my exclusion as unqualified which was based upon a staff error. The administrative remedy process that rectified the staff error regarding my eligibility for RDAP was Remey Id No. 1190504 and is Attachment F hereto.

5. Attachment E hereto contains the official documentation between the staff involved in my RDAP referral and early-release eligibility determination. It also includes my agreement to participate and the initial notes on my interview following the filing of Remedy ID No. 1190504-F1 at the Institution level to Warden Christensen.

6. Attachment G hereto is my Judgment in a Criminal Case signed on Dec. 12, 2008 by Judge Lee H. Rosenthal which initially alerted the BOP to my judicial recommendation to participate in RDAP and a number of other recommendations the BOP also ignored.

7. From Jan. 2, 2024 to the present, no staff member at USP Allenwood has provided me any treatment beyond medication alone for my Opioid Use Disorder/Cannabis Use Disorder outside of Dr. Brian Buschman whose note on that contact is Attachment B hereto as stated in (2) above.

8. If called upon to testify to these facts, I will do so.

Executed Pursuant to 28 U.S.C. 1746 on August 3rd, 2024 in USP Allenwood.

Jeremy Pinson #16267-064

EXHIBIT #1